**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**


LISA COOPER,

           Plaintiff,

v.                              CIVIL ACTION NO.  2:19-cv-00324

WESTFIELD INSURANCE COMPANY, et al.,

           Defendants.


**MEMORANDUM OPINION AND ORDER**


Pending before the Court is Defendant Westfield Insurance Company's ("Westfield") Motion for Leave to Supplement and Amend Its Answer and Counterclaim and File Third Party Complaint.  (ECF No. 10.)

For the reasons discussed more fully below, the Court **DENIES** Westfield's request to file a Third–Party Complaint and **GRANTS** Westfield's request to amend its answer and counterclaim. In addition, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff Lisa Cooper's claims against Defendant Thomas Seymour.

*I.     BACKGROUND*

Plaintiff Lisa Cooper ("Plaintiff"), a resident of Calhoun County, West Virginia, is the owner of Mom's Place Too, a restaurant business also located in Calhoun County, West Virginia.

1

(ECF No. 1–1 at 2, ¶¶ 1–3.)   On October 31, 2018, Plaintiff filed her Complaint in the Circuit Court of Wirt County, West Virginia, seeking a declaratory judgment and damages for bad faith after Defendant Westfield, her insurer, denied coverage with respect to an employment lawsuit filed by a former employee of Plaintiff's business.   (ECF No. 1 at 1–2, ¶¶ 1–2.)   Plaintiff brought suit against the following defendants: Westfield, a corporation with is principal place of business in Ohio; the Bill Bailey Insurance Agency, Inc. d/b/a The Reed Sturm Agency ("Reed Sturm"), a corporation and agency, respectively, incorporated and located in West Virginia; and Thomas Seymour ("Seymour"), a claims adjuster employed by Westfield whose residence is not pled in the Complaint.   (*Id.* at 3, ¶¶ 6, 13.)   Seymour was never served and has not made an appearance in this action.   (ECF No. 1 at 2.)   However, Westfield states Seymour is a resident of Ohio.   (*Id.* at 5, ¶ 17.)

On December 7, 2018, Westfield filed a counterclaim against Plaintiff seeking its own declaratory judgment that the policy does not provide coverage for the underlying lawsuit against Plaintiff's business and that Westfield owes no duty to defend.   (*Id.* at 2, ¶ 3.)   Further, Plaintiff settled her claims against Reed Sturm, and the Circuit Court Judge dismissed it as a party to this action on March 27, 2019.   (ECF No. 1–8.)   Once Reed Sturm was dismissed, Westfield removed this action asserting diversity as the sole basis for this Court's jurisdiction.   (ECF No. 1 at 4, ¶ 11.)

Westfield filed its Motion for Leave to Supplement and Amend Its Answer and Counterclaim and File Third Party Complaint on August 9, 2019.   (ECF No. 10.)   Plaintiff responded four months later.   (ECF No. 17.)

## II.    DISCUSSION

### A.  Impleader of Reed Sturm

Defendant Westfield removed this action asserting diversity as the sole basis for this Court's jurisdiction.   (ECF No. 1 at 4, ¶ 11.)   As originally filed, this case could not have been brought in federal court because both the Plaintiff and Defendant Reed Sturm are West Virginia residents.   However, removal was proper because Plaintiff voluntarily dismissed Reed Sturm, the resident defendant, from the suit, thus allowing Westfield, the non–resident defendant, to remove. *See Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 101 (1898).

In its current motion, Westfield states it learned for the first time after Reed Sturm's dismissal that Plaintiff's claims for unfair trade practices and common law bad faith are based on Reed Sturm's actions.   (ECF No. 11 at 2.)   Westfield now moves to implead Reed Sturm to allege claims for breach of contract and contractual indemnity because the insurance agency agreement between Westfield and Reed Sturm allegedly makes Reed Sturm derivatively liable for any recovery by Plaintiff against Westfield.   (*Id.* at 3.)

Under West Virginia law, "[a] party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution."   Syl. Pt. 6, *Bd. of Educ. of McDowell Cty. v. Zando, Martin & Milstead, Inc.*, 390 S.E.2d 796, 799 (W. Va. 1990).   In *Zando, Martin & Milstead*, the McDowell County Board of Education ("Board") filed suit against Zando, Martin & Milstead ("Zando"), an architectural and engineering firm, for damages resulting from the defective construction of a high school.   *Id.* at 800.   Zando filed a third–party complaint asserting claims for contribution against two subcontracting entities whom Zando alleged were responsible for the defects.   *Id.*   The Board

3

subsequently amended its complaint to file its own claims against these two same subcontracting entities. *Id.* at 801. The Board, prior to the verdict, settled with these two entities, and the state circuit court then dismissed those defendants from the litigation. *Id.* In addition, the state court dismissed Zando's crossclaims on the theory "that the settlement and release barred any further proceedings against [these subcontracting entities] arising from the same transaction." *Id.* The Supreme Court of Appeals of West Virginia upheld the dismissal of Zando's crossclaims and held that "the nonsettling defendant's right of contribution from a joint wrongdoer is extinguished by the plaintiff's settlement with and release of such wrongdoer prior to verdict." *Id.* at 804; *see also Jennings v. Farmers Mut. Ins. Co.*, 687 S.E.2d 574, 578 (W. Va. 2009) (per curiam) ("If a tortfeasor is not a part of the litigation—whether because of a settlement or because the tortfeasor was not sued—our law is clear that no contribution may be had from that tortfeasor."); Syl. Pt. 6, *Charleston Area Medical Center v. Parke–Davis*, 614 S.E.2d 15 (W. Va. 2005); *Lombard Canada, Ltd. v. Johnson*, 618 S.E.2d 446 (W. Va. 2005).

Here, Westfield seeks to file a crossclaim against Reed Sturm seeking "contractual indemnity from Reed Sturm for damages Plaintiff might recover from Westfield should Plaintiff establish that Westfield did not timely respond to her coverage request in connection with the" underlying employment litigation. (ECF No. 11 at 9.) Thus, Westfield seeks to implead Reed Sturm, a defendant who has already settled with Plaintiff and was dismissed from this action, for the purpose of asserting claims Westfield classifies as indemnification. The only difference between Westfield's request here and Zando's claims is that the former claims to seek indemnification while the latter sought contribution.

To determine if *Zando, Martin & Milstead* applies here, this Court must now look to the claim's substance rather than its label to determine if Westfield's claims are barred. *Grant Thornton, LLP v. Kutak Rock, LLP*, 719 S.E.2d 394, 403–404 (W. Va. 2011). The Supreme Court of Appeals of West Virginia recognizes "two basic types of indemnity: express indemnity, based on a written agreement, and implied indemnity, arising out of the relationship between the parties." *Sydenstricker v. Unipunch Prod., Inc.*, 288 S.E.2d 511, 515 (W. Va. 1982). However, contribution arises when "persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation." *Id.* at 516. "Contribution . . . rests on [the joint tortfeasors] primary joint or common liability to the plaintiff." *Id.* "One of the essential differences between indemnity and contribution is that contribution does not permit a full recovery of all damages paid by the party seeking contribution. Recovery can only be obtained for the excess that such party has paid over his own share." *Id.* "The touchstone of the right of inchoate contribution is this inquiry: Did the party against whom contribution is sought breach a duty to the plaintiff which caused or contributed to the plaintiff's damages?" *Zando, Martin & Milstead*, 390 S.E.2d at 802.

In Westfield's attached proposed Third–Party Complaint, Westfield alleges two counts against Reed Sturm: (1) breach of contract and (2) contractual indemnity. (ECF No. 10–1 at 36–37, ¶¶ 28–36.) Under the Westfield Insurance Agency Agreement ("Agreement"), Westfield alleges Reed Sturm "agreed to several provisions limiting Westfield's liability arising from Reed Sturm's errors and omissions." (*Id.* at 33, ¶ 8.) Specifically, Westfield alleges Section V of the Agreement contains "mutual indemnity provisions" which states as follows:

> [Reed Sturm] shall indemnify and hold [Westfield] harmless from and against
> liability for damage arising out of any [Reed Sturm] error or omission in the

preparation or handling of any insurance policy or billing procedure to which this Agreement applies, except to the extent that [Westfield] may have caused or contributed to such error or omission, including breach of this Agreement, and for all costs, including attorney's fees, reasonably incurred by [Westfield] in the defense of any claim or suit alleging such liability and seeking damages therefore.

(*Id.* ¶ 9–10.) Further, Westfield alleges Section XII.B of the Agreement required Reed Sturm to "immediately report all claims and losses and turn over all legal process involving coverages placed with [Westfield] to the nearest Company Claims Office . . . ." (*Id.* at 34, ¶ 11.) Reed Sturm allegedly failed to notify Westfield of the underlying state employment lawsuit or Plaintiff's claim to coverage. (*Id.* at 35, ¶ 20.) Westfield contends that Plaintiff's claims for unfair trade practices and common law bad faith are "based, *in part*, on Westfield's alleged failure to timely respond to Plaintiff's request for coverage in the" underlying state lawsuit. (*Id.* at 34, ¶ 17) (emphasis added).

Further, looking to Plaintiff's claims for unfair trade practices and bad faith, both counts are based on conduct beyond what Westfield alleges is solely the responsibility of Reed Sturm. For example, Plaintiff pleads that Westfield is liable for Unfair Trade Practices Act violations because Westfield failed to defend and/or indemnify her in the underlying state court action and failed to "conduct a reasonable investigation of all aspects of plaintiff's claims . . . ." (ECF No. 1–1 at 9, ¶¶ 66–67.) Additionally, Plaintiff pleads that Westfield is liable for common law bad faith due to its failure to defend and/or indemnify Plaintiff which Plaintiff claims "was wrongful and totally unsupported by the policy and by law." (*Id.* at 11, ¶ 84.) These allegations are clearly beyond the scope of conduct for which Westfield claims Reed Sturm could be held liable. Finally, Westfield's own Third–Party Complaint contends that Plaintiff's relevant claims are based "in part" on the actions it attributes to Reed Sturm. (*Id.* at 34, ¶ 17.) Thus, even assuming Reed

6

Sturm is wholly liable to Westfield under the Agreement provisions provided, Westfield could not seek indemnification from Reed Sturm as Plaintiff's claims are supported by additional conduct beyond that which Westfield claims is solely the responsibility of Reed Sturm. Consequently, Westfield's claims are best classified as contribution because Reed Sturm cannot be found wholly liable to Westfield for all the damages Plaintiff seeks with respect to the two counts at issue. *Sydenstricker*, 288 S.E.2d at 515 ("One of the essential differences between indemnity and contribution is that contribution does not permit a full recovery of all damages paid by the party seeking contribution.").

Because Westfield seeks to implead Reed Sturm to assert claims of contribution, its request is barred by the holding in *Zando, Martin & Milstead*. Further, there has been no suggestion that Plaintiff's settlement with Reed Sturm was not made in good faith. Accordingly, the Court **DENIES** Westfield's request to file a Third–Party Complaint against Reed Sturm as such impleader is prohibited under West Virginia law.

### B. Amendments to Answer and Counterclaim

In addition, Westfield seeks leave "to supplement and amend its state court Answer and Counterclaim in order to make minor amendments, including conforming certain state law citations to reflect federal law and updating the allegations to account for events and procedural history that have occurred since Westfield first filed the pleading." (ECF No. 11 at 3.) Plaintiff consents to this request. (ECF No. 17 at 1.) Therefore, Westfield's request to supplement and amend its answer and counterclaim is **GRANTED**. Westfield is **DIRECTED** to file its amended pleading forthwith.

### C. *Defendant Thomas Seymour*

Finally, Westfield advises that Defendant Seymour, a Westfield claims representative, was not served by Plaintiff and has not made an appearance in this action. (ECF No. 11 at 6, n.7.) Under Rule 4(m) of the Federal Rules of Civil Procedure, and even under the more generous time limits provided in the West Virginia Rules of Civil Procedure, Plaintiff has failed to serve Defendant Thomas Seymour within the required time allotted for service. *See* W. Va. R. C. P. 4(k). In fact, Plaintiff filed her Complaint in the Circuit Court of Wirt County, West Virginia, on October 31, 2018, well over one year ago. (ECF No. 1 at 1, ¶ 1.) Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendant Thomas Seymour.

## III. CONCLUSION

For the forgoing reasons, the Court **DENIES** Westfield's request to file a Third–Party Complaint against Reed Sturm and **GRANTS** Westfield leave to amend its answer and counterclaim against Plaintiff. Further, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendant Thomas Seymour. The Court **DIRECTS** the Clerk to remove Defendant Thomas Seymour as a party to this action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     February 28, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE

8